UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 3:22-CR-139-CHB |
| ) | |
| v. ) | |
| ) | **ORDER ADOPTING** |
| ANDREW LOPEZ, ) | **MAGISTRATE JUDGE'S** |
| ) | **REPORT & RECOMMENDATION** |
| Defendant. ) | |
| ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Andrew Lopez's Objections to the Magistrate's Report and Recommendation Regarding his Motion to Dismiss. [R. 46]. The Report and Recommendation by United States Magistrate Judge Regina S. Edwards, [R. 43], recommends that Lopez's Motion to Dismiss Firearm Charge as Unconstitutional, [R. 22], be denied. Magistrate Judge Edwards considered the Motion to Dismiss on a full record, including a Response in opposition to the Motion by the United States, [R. 23], notices of supplemental authority by defense counsel, [R. 32]; [R. 35], an evidentiary hearing, [R. 37], at which the government provided additional authority, [R. 47], and post-hearing briefs filed by both parties, [R. 39]; [R. 40].

This Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1). Because the Court perceives no fault with the Magistrate Judge's analysis, and because Lopez's objections fail to demonstrate an error in the reasoning of the Magistrate Judge, the Report and Recommendation will be adopted as the Opinion of the Court.

Magistrate Judge Edwards ably laid out the relevant facts in the Report and Recommendation. *See* [R. 43]. Therefore, rather than reciting all the facts anew, the Court will address the facts of this case only to the extent necessary to rule on Lopez's objections.

**I.     Background and Legal Framework**

In the sole count of his indictment, Lopez is charged with possession of a firearm by a prohibited person, *i.e.*, being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1]  *See* [R. 1, pp. 1-2] (listing multiple firearms). Section 922(g)(1) states:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (cleaned up). According to his indictment, Lopez has a 1995 felony conviction from Texas for criminal mischief and a 1996 felony conviction from Texas for aggravated assaulted. *See* [R. 1, pp. 1-2].

In his Motion to Dismiss, Lopez argues that the firearm charge against him is unconstitutional under the Second Amendment. *See* [R. 22, p. 3]. The Second Amendment states in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Relevant here, this amendment has been interpreted to "protect an individual right to keep and bear arms for self-defense." *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ---, 142 S. Ct. 2111,

---

[1] Section 924(a) was amended in June 2022, and the statutory penalties for violation of § 922(g)(1) are now found in § 924(a)(8), which reads: "Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both." 18 U.S.C. § 924(a)(8). Lopez's indictment alleges his relevant conduct occurred on or about July 16, 2022, *see* [R. 1], meaning he is subject to the heightened penalties of § 924(a)(8). Because the indictment only lists the old penalties and statute, *see* [R. 1, pp. 2-3], the Court will refer this matter to the Magistrate Judge for a status conference to address the statutory penalties for Count 1.

2125 (2022) (citing *D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010)).  Recently, the Supreme Court clarified and

> reiterate[d] that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129-30; *see also United States v. Ramadan*, No. 22-1243, 2023 WL 6634293, at *2 (6th Cir. Oct. 12, 2023) ("[P]ost-*Bruen*, courts ask (1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the law by demonstrating consistency with the Nation's history of firearm regulation."); *United States v. Goins*, 647 F. Supp. 3d 538, 544 (E.D. Ky. 2022) ("*Bruen* requires this Court to analyze two questions. Does the Second Amendment's plain text apply to Mr. Goins?  If it does, is permanently disarming him consistent with this Nation's historical tradition of firearm regulation?") (internal citations omitted).

      Through his Motion, Lopez relies on *Bruen* to argue that his conduct (possessing a firearm) is covered by the Second Amendment and that the government cannot establish that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation."  *See* [R. 22, p. 3].  In response, the United States contends that Lopez's conduct is *not* protected by the Second Amendment, and that even if it were, the felon-in-possession statute *is* consistent with the country's history of firearm regulation.  *See, e.g.*, [R. 23, p. 11].

      In the Report and Recommendation, Magistrate Judge Edwards agreed with Lopez that his conduct is protected by the Second Amendment's text.  *See* [R. 43, p. 4] ("The Constitution generally protects the conduct at issue: Lopez's right to bear arms.  The Second Amendment

contains no qualifying language as it pertains to 'the people.'  As such, the Court is unconvinced by the United States' assertion that 18 U.S.C. § 922(g)(1), which takes away felons' right to possess firearms, does not implicate Second Amendment rights.") (internal citation omitted).  Lopez, understandably, has not objected to this finding by Magistrate Judge Edwards, *see* [R. 46, p. 2], and the Court will not disturb it here.  *See Goins*, 647 F. Supp. 3d at 548 ("[T]he Court will assess history relative to the burden placed upon Mr. Goins's right to bear a firearm for self-defense by Section 922(g)(1) rather than relative to whether he is one of the people entitled to claim the Second Amendment.").

In such a posture, the question Magistrate Judge Edwards proceeded to address, and the one the Court now considers through Lopez's objections, is whether § 922(g)(1) "stands under *Bruen*."  *See, e.g.*, [R. 43, p. 4].  In undertaking this analysis, the Court, like Magistrate Judge Edwards did, considers the "historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6 ("The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies."); *see also* [R. 43 (Recommended Disposition), pp. 6-10].  Admittedly, the Supreme Court's direction that courts should use the "historical record compiled by the parties" is not a clearly defined standard, and courts across the country have expressed frustration in understanding what the Supreme Court meant by that instruction in *Bruen*. *See, e.g.*, *Worth v. Harrington*, No. 21-CV-1348 (KMM/LIB), 2023 WL 2745673, at *9 (D. Minn. Mar. 31, 2023) ("[R]elying too heavily on party presentation to resolve a dispute about constitutional history opens the door to other problems.  For example, courts faced with virtually identical issues could easily reach different conclusions based not on a complete or accurate picture of the relevant aspects of the nation's history and tradition of firearms

regulation, but on something as ahistorical as expert witness availability or the researching acumen of the litigants appearing before them.").

Even so, courts, in interpreting *Bruen*, have considered the "historical record compiled by the parties" to include the briefs and case law cited by the parties and have not required the government to call a historian as an expert witness. *See, e.g.*, *United States v. Quailes*, No. 1:21-CR-0176, 2023 WL 5401733, at *3 n.2 (M.D. Pa. Aug. 22, 2023) ("The court notes that it will resolve the motion to dismiss based on the parties' presentations in their briefs.  Neither party has presented an expert report from a historian or requested that the court appoint an expert historian."); *United States v. Harper*, No. 1:21-CR-0236, 2023 WL 5672311, at *3 n.2 (M.D. Pa. Sept. 1, 2023) (same); *United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *5 n.28 (W.D. Okla. Feb. 3, 2023) ("The Court will thus decide this legal question based on the arguments and historical record the parties have compiled in their respective briefs and during oral argument."); *United States v. Yates,* No. 1:21-CR-00116-DCN, 2023 WL 5016971, at *2 (D. Idaho Aug. 7, 2023) (discussing why the government is not required to present an expert witness in *Bruen* challenge). *But see United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *15 (S.D. Miss. June 28, 2023) ("The most disappointing failure is that the party with the burden to prove history and tradition—the United States—did not designate a historian to testify on the analogues, if any, to modern felon-in-possession laws."). The Court will follow that approach here and considers the historical record in this case to include the parties' briefs and the cases and other support cited therein.[2]  Further, as in other instances of legal analysis, the Court will also consider

---

[2] Both parties cited numerous cases (and even briefing from other cases) in support of their positions regarding the constitutionality of § 922(g)(1).  *See* [R. 22 (Motion)]; [R. 23 (Response)]; [R. 32 (Defendant Supplemental Authority)]; [R. 35 (Defendant Supplemental Authority)]; [R. 37 (Evidentiary Hearing)]; [R. 39 (Defendant Post-Hearing Brief)]; [R. 40 (United States Post-Hearing Brief)]; [R. 46 (Objections)]; [R. 47 (United States Authority Provided at Hearing)].

cases cited in the authorities provided by the parties and those the Court has found independently in researching these issues. *Cf. United States v. Villalobos*, No. 3:19-CR-00040-DCN, 2023 WL 3044770, at *11 n.15 (D. Idaho Apr. 21, 2023) ("[T]he Court today is not being lazy by citing other courts, nor is its analysis lacking in rigor by accepting other courts' recitation of the relevant history."); *Bruen*, 142 S. Ct. at 2130 n.6 ("The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies.").

Substantively, the legal analysis to be undertaken in this case requires the Court to compare the historical regulations offered by the government in support of its position that § 922(g)(1) is constitutional with the modern-day prohibition challenged here. *See Goins*, 647 F. Supp. 3d at 548 ("To find that firearm activity is unprotected by the Second Amendment, a court must compare and contrast the modern law at issue to some historic analog."). Two metrics guide this analysis: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133 ("[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry.") (emphasis in original) (internal quotation marks omitted). The timing of the chosen historical analog is also important. *See Goins*, 647 F. Supp. 3d at 548; *Bruen*, 142 S. Ct. 2136 ("The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years.").

However, the Supreme Court has stressed that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S. Ct. at 2133 (emphasis in original). Thus, "even if a modern-day

regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2118.

Magistrate Judge Edwards undertook the analysis required by *Bruen*, and after conducting a thorough review of the parties' briefing, the record, and multiple cases from inside and outside the Sixth Circuit, she concluded that "our Nation has a history and tradition of analogous restrictions to § 922(g)(1)." [R. 43, p. 10]. The Report and Recommendation therefore recommends that Lopez's Motion to Dismiss be denied. *See id.* Lopez timely filed objections to the Recommendation. *See* [R. 46].

## II. Objections

The Court perceives Lopez as primarily advancing two objections. First, he challenges the Report and Recommendation's conclusion that § 922(g)(1) is constitutional as applied to him.[3] *See* [R. 46, p. 1]. Second, he objects to the Recommendation's decision not to consider the testimony of witnesses that he called at the evidentiary hearing. *See id.* at 3-4. Upon *de novo* consideration, the Court concludes that neither of Lopez's objections has merit. *See* 28 U.S.C. § 636(b)(1).

### A. Historical Consideration

Through his objections, Lopez has presented several grounds on which he argues the Report and Recommendation erroneously concluded that § 922(g)(1) is constitutional as applied to him. For example, Lopez contends that the Report and Recommendation simplified his position as relying *only* on the fact that Congress passed felon-in-possession laws in the twentieth century, when in fact he "provided multiple sources supporting the proposition that prohibiting people with

---

[3] Lopez asserts an "as applied" challenge to § 922(g)(1) in his motion. *See* [R. 22, pp. 3-4, 7, 10]. However, courts nationwide have also rejected facial challenges to the statute. *See Parker*, No. 3:22-cr-82-RGJ, 2023 WL 3690247, at *2 n.2 (W.D. Ky. May 26, 2023) (collecting cases).

felony convictions from possessing firearms is not consistent with the historical traditions of our nation at the time of the enactment of the Second Amendment." [R. 46, p. 6]; [R. 43, p. 9].

However, this objection cherry picks one line from the Report and Recommendation and ignores the rest. Contrary to Lopez's argument, the Report and Recommendation considered the various arguments he presented, and the sources he offered in support of those arguments, and determined that the authority Lopez cited was unpersuasive. *See, e.g.*, [R. 43, p. 6] ("The Court will rely on the numerous related filings made by the parties on this motion."). That Lopez disagrees with the conclusion of the Report and Recommendation does not demonstrate that it failed to consider his positions or cited authority. Any fair reading of the Report and Recommendation reflects that Lopez's arguments were thoroughly addressed and correctly rejected.

Next, Lopez argues that the Report and Recommendation failed to include proposed findings "regarding the historical traditions of our nation at the time the Second Amendment was enacted in 1791." [R. 46, p. 2]. Lopez's objection is unpersuasive, however, as the Report and Recommendation *did* carefully evaluate the record and arguments and adequately discussed the historical context of the Second Amendment's underpinnings. *See* [R. 43, pp. 6-9]. To be sure, the Report and Recommendation discussed multiple cases, including several that *thoroughly* examined the historical context of firearm regulations. *See, e.g., id.* at 6 (citing *Parker*, 2023 WL 3690247; *United States v. Goolsby*, No. 21-3087, 2022 WL 670137 (6th Cir. Mar. 7, 2022); *United States v. Burgess*, Nos. 22-1110/22-1112, 2023 WL 179886 (6th Cir. Jan. 13, 2023); *Goins*, 647 F. Supp. 3d 538; *United States v. Combs*, --- F. Supp. 3d ---, No. 5:22-136-DCR, 2023 WL 1466614 (E.D. Ky. Feb. 2, 2023)). Given the extensive and detailed discussions of the history and traditions of firearm regulation of individuals whom society has deemed dangerous in the cases

relied upon by the Report and Recommendation, Lopez's objection is not well taken. *See Villalobos*, 2023 WL 3044770, at *11 n.15 ("The Court could fill pages with the law review articles, treatises, and dissertations outlining the historical analogs and traditions of disarming those who failed to uphold the virtuous citizenry that our founders envisioned. But to what end? It has been exhaustively outlined before. There is no need for the Court to recite the same things again here just for the sake of saying it did it in this case.").

Instead, the Court observes that, although the burden is on the United States under *Bruen* to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation," *see Bruen*, 142 S. Ct. at 2130, Lopez has offered no binding authority that undercuts the detailed analysis employed by "the overwhelming consensus" of courts that have found § 922(g)(1) has historical analogues to support its constitutionality. *See Parker*, 2023 WL 3690247, at *2-3 (collecting cases). To the contrary, the cases cited by the parties in their briefing and supplemental filings, those relied upon by Magistrate Judge Edwards in the Report and Recommendation, and those the Court has otherwise reviewed, compel the conclusion that "the United States has carried its burden here in showing that history supports disarming [Lopez]." *Id.* at *3. Specifically, the government has carried its burden to show that the historical traditions of this nation support "disarming individuals, who like [Lopez], have committed crimes that indicate they are a danger to public safety." *See Goins*, 647 F. Supp. 3d at 551.

As other courts have observed, the legal traditions that undergird the Second Amendment include prohibitions aimed at keeping firearms away from people deemed to be dangerous or threats to public safety. *See id.* at 553 ("From Bracton to Blackstone, the common law understood that the sovereign could strip individuals of weapons if it deemed them violent or a threat to disturb the peace. The colonists inherited this understanding as well."). Indeed, "[r]estrictions on the

possession of firearms date to England in the late 1600s, when the government disarmed non-Anglican Protestants who refused to participate in the Church of England, and those who were 'dangerous to the Peace of the Kingdom[.]'" *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (citing Joyce Lee Malcom, *To Keep and Bear Arms: The Origins of an Anglo-American Right* 45 (1994); Militia Act of 1662, 13 & 14 Car. 2 c. 3, § 13). "Parliament later forbade ownership of firearms by Catholics who refused to renounce their faith," and "[t]he English Bill of Rights established Parliament's authority to determine which citizens could 'have arms . . . by Law." *Id.* (citing An Act for the Better Securing the Government by Disarming Papose who were dangerous to the Peace of the Kingists and Reputed Papists, 1 W. & M., Sess. 1, c. 15 (1688); An Act Declaring the Rights and Liberties of the Subject and Settling the Succession of the Crown, 1 W. & M., Sess. 2, c. 2, § 7 (1689); *Bruen*, 142 S. Ct. at 2141-42).

Moving to consideration of colonial-era American restrictions, legislatures prohibited Native Americans from owning firearms and subjected religious minorities to disarmament. *Id.* (citing Michael A. Bellesiles, *Gun Laws in Early America: The Regulation of Firearms Ownership, 1607-1794*, 16 Law & Hist. Rev. 567, 574, 578-79 (1998); Act of Aug. 4, 1675, 5 *Records of the Colony of New Plymouth* 173 (1856); Act of July 1, 1656, *Laws and Ordinances of New Netherland* 234-35 (1868); Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 263 (2020)). And "[i]n the era of the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty." *Id.* at 503 (citing *4 Journals of the Continental Congress*, 1774-1789, at 205 (Worthington Chauncey Ford ed., 1906); Act of Mar. 14, 1776, ch. 21, 1775-76 Mass. Acts 479; Act of May 1777, ch. III, 9 *The Statutes at Large; Being a Collection*

*of all the Laws of Virginia* 281-82 (1821); Act of June 13, 1777, ch. 756 §§ 2-4, 1777 Pa. Laws 110, 111-13; Act of June 1776, 7 *Records of the Colony of Rhode Island and Providence Plantations in New England* 567 (1862); Act of Nov. 15, 1777, ch. 6, 1777 N.C. Sess. Laws 231; Act of Sept. 20, 1777, ch. XL, 1777 N.J. Laws 90; *see also* Joseph Blocher & Caitlan Carberry, *Historical Gun Laws Targeting "Dangerous" Groups and Outsiders* 5 & nn. 38-41 (Duke L. Sch. Pub. L. & Legal Theory Series No. 2020-80), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3702696). Finally, throughout these time periods, early legislatures considered or enacted still other restrictions on certain individual's ability to possess firearms. *See id.* (citing 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 665 (1971); Act of Oct. 9, 1652, *Laws and Ordinances of New Netherland* 138 (1868); Act of Apr. 20, 1745, ch. III, 23 *The State Records of North Carolina* 218-19 (1904); An Act for the Punishment of Certain Crimes Against the United States, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790); Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664-65; Act of May 1777, ch. XI, 9 *The Statutes at Large; Being a Collection of all the Laws of Virginia* 302-03 (1821); *A Digest of the Laws of Maryland* 255-56 (1799); Stuart Banner, *The Death Penalty: An American History* 3, 18, 23 (2002); John D. Bessler, *Cruel & Unusual: The American Death Penalty and the Founders' Eighth Amendment* 56-57 (2012); Kathryn Preyer, *Penal Measures in the American Colonies: An Overview*, 26 Am. J. Legal Hist. 326, 330-32, 342, 344-47 (1982)).

Upon comparison, the Court concludes that the federal felon-in-possession statute is sufficiently analogous to the historical restrictions prohibiting categories of individuals deemed dangerous by society from having firearms for the modern-day restriction to pass constitutional muster. *See Bruen*, 142 S. Ct. at 2133 ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if

a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."); *see also Jackson*, 69 F.4th at 505 ("In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons."). Specifically in this regard, the Court observes that, "the British common law that informed our founding era enactments included the power to disarm individuals who posed a danger to public safety," and "it is in that world that the Second Amendment emerged." *See Goins*, 647 F. Supp. 3d at 541. Because Lopez's criminal record, which includes Texas felony convictions for criminal mischief and aggravated assault, *see* [R. 1, pp. 1-2], "suggests that his crimes were similarly dangerous, the Government can prevent him from carrying a gun without violating his Second Amendment right." *Goins*, 647 F. Supp. 3d at 541. The Report and Recommendation therefore correctly concluded that § 922(g)(1) is constitutional as applied to Lopez. *See Jackson*, 69 F.4th at 505-06.

Lopez's reliance on "outlier" decisions in which courts have found § 922(g)(1) unconstitutional in as applied challenges, including *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), and *Bullock*, 2023 WL 4232309, at *1, 5, is unavailing. *See United States v. Warren*, No. 22-CR-231(DLI), 2023 WL 5978029, at *6-8 (E.D.N.Y. Sept. 14, 2023) (describing *Range* and *Bullock* as "outliers"). Neither of those decisions binds this Court,[4] and the Third Circuit in *Range* took great pains to explain that its determination was based on the particular statute at issue in that case. *See Range*, 69 F.4th at 106 ("Our decision today is a narrow one.

---

[4] The Sixth Circuit has not addressed the constitutionality of § 922(g)(1) post-*Bruen*.

Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a)."). Thus, given the "overwhelming consensus" and "great number of opinions on the constitutionality of § 922(g)(1)," *see Parker*, 2023 WL 3690247, at *3, this Court declines Lopez's invitation to follow the rationale of *Range* and *Bullock*.

Lopez also argues that the Report and Recommendation improperly relied on *pre-Bruen* cases and dicta from *Heller*. Here, it is true that *Bruen* certainly requires the Court to carefully approach older Sixth Circuit case law that employed the two-part test rejected by the Supreme Court in *Bruen* and to give thoughtful scrutiny to the Supreme Court's assurances in *Heller* regarding the presumption that felon-in-possession bans are lawful. *See Goins*, 647 F. Supp. 3d at 542-44. However, contrary to Lopez's position, *Bruen* and older case law are not mutually exclusive. Instead, as the Eighth Circuit recently explained in rejecting an as-applied constitutional challenge to § 922(g)(1):

> The Supreme Court has said that nothing in *Heller*, 554 U.S. 570 (2008), which recognized an individual right to keep and bear arms, "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626; *see McDonald*, 561 U.S. at 786 (plurality opinion). The decision in *Bruen*, which reaffirmed that the right is "subject to certain reasonable, well-defined restrictions," 142 S. Ct. at 2156, did not disturb those statements or cast doubt on the prohibitions. *See id.* at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.). Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1).

*Jackson*, 69 F.4th at 501-02 (citations cleaned up and footnote omitted); *see also Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) ("Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions."); *Parker*, 2023 WL 3690247, at *1-

2 ("*Bruen* affirmed the Supreme Court's prior holdings in *Heller* and *McDonald*."). Moreover, "[e]ven if *Bruen* had not upheld *Heller* and *McDonald*," the historical analysis above demonstrates that the government has carried its burden in this case to demonstrate that § 922(g)(1) is constitutional as applied to Lopez. *See Parker*, 2023 WL 3690247, at *1-2; *see also Goins*, 647 F. Supp. 3d at 543-44, 551. Lopez's objections to the contrary will be overruled.

### B. Lopez's Witnesses

Last, Lopez objects to the Report and Recommendation's refusal to consider the testimony of the two witnesses he called at the evidentiary hearing. *See* [R. 46, p. 3] ("Mr. Lopez objects to the R&R's conclusion that his witnesses were not helpful to the analysis."). At the hearing, Lopez called Professor Ricky Jones "as an expert in the historical traditions of our nation," *see id.* at 4, and John Friend, an attorney who has studied the Second Amendment "for ten years," *see id.* at 3, to present evidence regarding the nation's historical traditions of firearm regulation. *See* [R. 37]. However, Magistrate Judge Edwards declined to consider the evidence of these witnesses in her analysis, finding "that neither Dr. Jones nor Mr. Friend produced persuasive evidence as to [the Court's] historical inquiry." [R. 43, p. 6]. The Court agrees with the Report and Recommendation's approach and conclusion. *See id.*; *see also* [R. 40 (United States' Supplemental Response), pp. 12-17].

First, Dr. Jones forthrightly admitted that he is "not a Second Amendment expert." [R. 37, p. 20:8]. Second, and similarly, Attorney Friend was unable to specifically discuss any of the sources or articles he had relied on in preparation for the hearing or that informed his opinion regarding the proper interpretation of the Second Amendment. *See id.* at 36-37. On this record, the Court is unable to see how the testimony of either individual, even if considered, would provide a competent historical record for the Court to conclude that § 922(g)(1) is unconstitutional. *Cf.*

*Bruen*, 142 S. Ct. 2130 at n.6 ("The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies.") (emphasis in original). In such a posture, Lopez's objection concerning his witnesses will be overruled.

### III.  Conclusion

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Report and Recommendation **[R. 43]** is **ADOPTED** as the findings and conclusions of the Court.

2. Lopez's Objections to the Magistrate's Report and Recommendation Regarding his Motion to Dismiss **[R. 46]** are **OVERRULED**.

3. Lopez's Motion to Dismiss Firearm Charge as Unconstitutional **[R. 22]** is **DENIED**.

4. This matter is **REFERRED** to United States Magistrate Judge Regina S. Edwards for an in-court status conference to address the statutory penalties for Count 1 of the indictment.

This the 1st day of November, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY